# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

EREEDIUS GROSS

VERSUS

N. BURL CAIN, WARDEN

CIVIL ACTION

NO.  09-3353

SECTION "F"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    STATE COURT PROCEDURAL BACKGROUND

Petitioner Ereedius Gross is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On April 28, 1999, a grand jury in Tangipahoa Parish charged Gross and his mother, Mary Lou Bennett, in an indictment with the second degree murder of Joseph Bennett.[3] The Louisiana First Circuit Court of Appeal summarized the facts of the case in relevant part as follows:

> On the evening of February 7, 1999, defendant and his girlfriend were present at the mobile home where the victim lived with defendant's mother, Mary Bennett. The victim asked defendant to go to the store for him to buy beer, and again later to buy cigarettes. Upon returning from the second trip, defendant found his mother crying. When defendant asked her what was wrong, she answered, "I'm tired of being "f----d over." Defendant concluded the victim had hit Ms. Bennett, because "she don't cry for nothing." According to defendant, he confronted the victim about making his mother cry, and the victim told him it was none of his "damm (sic) business." As they continued to argue, defendant claims the victim told him that "one of these times you're going to jump in my business and I'm going to kill you." Defendant responded that they were "going to kill each other."
>
> At some point, the victim, who had been drinking heavily, went to bed in his bedroom, still fussing. Ms. Bennett was lying down on the couch. Defendant walked to the back bedroom, retrieved a 22-caliber rifle from under the mattress and returned to the victim's bedroom. He told the victim, "So, you're going to kill me," to which the victim purportedly replied, "Yeah, I'm going to," and started to get up. Defendant then shot the victim several times. He returned the rifle to the back bedroom and fled the house, making no effort to check on the victim or seek medical assistance for him.

---

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 3 of 4, Indictment, 4/28/99; Grand Jury Return, 4/28/99.

The coroner testified that the victim, whose blood alcohol level was .22 grams percent, sustained gunshot wounds to his head, neck, face and shoulders. He died as a result of the head wound. The coroner further testified that he removed white stuffing fibers from two of the victim's wounds during the autopsy. At trial, the state presented evidence that a teddy bear filled with a white stuffing, which had several holes in it consistent with gunshots, was found in close proximity to the victim's body. Pat Lane, a state expert in firearm identification and crime scene investigation, concluded that the teddy bear was in close proximity to the victim's face and shoulder at the time he was shot, based on the bullet paths through the bear and the stuffing fibers found in the victim's wounds. Mr. Lane also opined, based on residue tests on the teddy bear, that at least one of the gunshots was fired from a distance of only one to two feet.

As further evidence, the state presented a letter written by defendant to his girlfriend while he was in jail awaiting trial. In the letter, defendant twice specifically acknowledged killing the victim, but nevertheless asked his girlfriend to say that his mother, Ms. Bennett, did it so that he would not be convicted and sentenced to prison for life.

Although defendant did not testify at trial, his brother, Walter Gross, and his sister-in-law, Kenyetta Knox, did testify on his behalf. They both testified that the victim was extremely abusive, verbally and physically, to Ms. Bennett, which resulted in her being taken to the hospital on one occasion. Ms. Knox indicated that defendant had gotten into a fight with the victim at Thanksgiving over the victim hitting Ms. Bennett. Both defense witnesses also testified that, about one month before his death, the victim had threatened defendant and his family with a gun.

State v. Gross, 810 So.2d 580 (La. App. 1st Cir. 2001) (Table); State Record Volume 2 of 4, First Circuit Opinion, 2001-KA-0520, pages 2-4, December 28, 2001.

Gross was tried before a jury on January 4-5, 2000, and he was found guilty of second degree murder.[4] At a hearing on February 23, 2000, the state trial court denied

---

[4]St. Rec. Vol. 1 of 4, Docket Entry, 1/4/00; Docket Entry, 1/5/00; Jury Verdict, 1/5/00; St. Rec. Vol. 4 of 4 at pp. 368-69, Trial Transcript, 1/5/00.

Gross's motions for new trial and for post-verdict judgment of acquittal.[5] On March 21, 2000, the state trial court sentenced Gross to life in prison at hard labor without the benefit of parole, probation or suspension of sentence.[6]

In his original direct appeal brief to the Louisiana First Circuit, submitted on November 27, 2000, Gross raised two issues for review:[7] (1) The evidence at trial was insufficient to support the second degree murder verdict. (2) Sentencing errors may have occurred. On January 25, 2001, the First Circuit remanded the matter to the state trial court so that the record could be supplemented with transcripts of hearings, including the sentencing hearing, conducted on February 23 and March 21, 2000.[8] On April 9, 2001, the First Circuit granted Gross's pro se request to file a supplemental appeal brief.[9] In his supplemental brief filed pro se, Gross argued the following six (6) errors: (1) La. Code Crim P. art. 413(B) was unconstitutional in the manner in which the grand jury foreperson was selected. (2) The testimony of an expert witness for the State was improperly admitted at trial. (3) The trial court improperly permitted the State to exercise

_____

[5]St. Rec. Vol. 4 of 4, Motion Transcript, 2/23/00; St. Rec. Vo1. 1 of 4, Docket Entry, 2/23/00; St. Rec. Vol. 3 of 4, Motion for New Trial, 1/27/00; Motion for Post-Verdict Judgment of Acquittal, 2/23/00.

[6]St. Rec. Vol. 4 of 4 at p.2, Transcript of Sentencing Hearing, 3/21/00; St. Rec. Vol. 1 of 4, Docket Entry, 3/21/00.

[7]St. Rec. Vol. 1 of 4, 2000-KA-2254, Original Brief on Behalf of Defendant-Appellant, 11/27/00.

[8]Id., First Cir. Order, No. 2000-KA-2254, 1/25/01.

[9]Id., First Cir. Order, No. 01-KA-0520, 4/9/01.

a peremptory challenge to strike a juror after 15 jurors had already been selected and sworn. (4) The prosecutor made prejudicial arguments to the jury concerning defendant's failure to offer certain testimony in his defense. (5) His trial counsel provided ineffective assistance. (6) His appellate counsel provided ineffective assistance.[10]

On December 28, 2001, the appeal court affirmed the conviction and sentence.[11] The court concluded that all of Gross's claims, challenging the sufficiency of the evidence, the striking of the juror, and ineffective assistance of counsel, were without merit. The court also held that Gross's grand jury claim was procedurally barred from review for failure to file a motion to quash the indictment, and alternatively was without merit. The court also found that the challenge to the expert's testimony and the prosecutor's comments during closing argument were also procedurally barred from review for lack of a contemporaneous objection at trial, and alternatively were without merit.

The Louisiana Supreme Court denied Gross's subsequent writ application without reasons on February 7, 2003.[12] Gross's conviction became final 90 days later, on May

---

[10] Id., "Criminal Appeal Supplemental Brief of Defendant-Appellant Eredius Gross," No. 2001-KA-0520, 7/11/01.

[11] State v. Gross, 810 So.2d 580 (La. App. 1st Cir. 2001) (Table); St. Rec. Vol. 2 of 4, First Circuit Opinion, 2001-KA-0520, pages 2-4, December 28, 2001.

[12] State v. Gross, 836 So.2d 84 (La. 2003); St. Rec. Vol. 2 of 4, La. S. Ct. Order, 2002-KO-0283, 2/7/03.

8, 2003, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

About five (5) months later, on October 12, 2003, Gross submitted an application for post-conviction relief in the state trial court raising four (4) grounds for relief:[13] (1) He was denied due process because the indictment failed to state crucial elements of the crime charged, including specific intent. (2) He was denied the constitutional right to testify on his own behalf. (3) His counsel gave ineffective assistance because he failed adequately to investigate the case and failed to challenge the sufficiency of the indictment. (4) He was denied his right to confront and cross-examine his mother the co-defendant, or Katina Rose, his girlfriend, about letters addressed to Rose and used against him at trial.

Ruling on the application was delayed in the trial court for almost five years, before it was orally denied in open court on January 30, 2008.[14] A written order confirming the oral denial was subsequently entered on February 22, 2008.[15] The court

---

[13]St. Rec. Vol. 2 of 4, Uniform Application for Post-Conviction Relief, 10/12/03. This pleading also bears a filing date of 10/27/03 and a signature date of 10/22/03.

[14]St. Rec. Vol. 1 of 4, Docket Entry, 1/30/08; St. Rec. Vol. 3 of 4, Hearing Transcript (continued), pp. 59-65, 1/30/08.

[15]St. Rec. Vol. 2 of 4, Trial Court Judgment, 2/28/08 (signed 2/22/08).

held that the indictment was not defective and that Gross was not prevented by his counsel from testifying at trial. The court also determined that counsel was not ineffective in the presentation of the defense or the failure to obtain defense experts. The court also denied relief on the last claim, finding it without merit in light of the testimony at trial.

Gross timely appealed this ruling by filing a "Notice of Intent to Seek Supervisory Writ of Review" in the Louisiana First Circuit on February 8, 2008.[16] On May 28, 2008, the appellate court denied the writ application without reasons.[17]

Gross then timely submitted a writ application to the Louisiana Supreme Court which was filed on June 30, 2008.[18] The supreme court denied the application without reasons on March 27, 2009.[19]

---

[16]St. Rec. Vol. 2 of 4, Notice of Intent to Seek Supervisory Writ of Review, 2/8/08 (signed 2/2/08).

[17]St. Rec. Vol. 2 of 4, 1st Cir. Order, 2008-K-0410, 5/28/08.

[18]The record does not contain a copy of this writ application. A member of the Court's staff obtained the filing date from the office of the clerk of the Louisiana Supreme Court. According to the information received from the deputy clerk, the writ application was postmarked on June 11, 2008. This was timely under La. S. Ct. Rule X§5.

[19]State ex rel. Gross v. State, 5 So.3d 136 (La. 2009); St. Rec. Vol. 3 of 4, La. S. Ct. Order, 2008-KH-1409, 2009.

## II. FEDERAL HABEAS PETITION

On May 29, 2009, the clerk of this court filed Gross's petition for federal habeas corpus relief.[20] It had been submitted to the court on April 9, 2009, but his petition to proceed in forma pauperis was subsequently denied.[21] In his brief in support of his federal habeas petition,[22] Gross asserts eight (8) grounds for relief: (1) The evidence was insufficient to support the second degree murder verdict, particularly in light of the evidence supporting his self-defense claim. (2) La. Code Crim. P. art. 413(B) unconstitutionally allowed racial discrimination in the grand jury foreperson selection. (3) His Sixth Amendment rights were violated when the trial court permitted the State to exercise a peremptory challenge to strike a juror after the entire jury had been sworn. (4) The prosecutor violated his rights to a fair trial when he made a prejudicial closing argument concerning Gross's failure to testify or present witnesses in his defense. (5) The indictment unconstitutionally failed to include a crucial element of the charged offense. (6) His constitutional rights were violated when his counsel prevented him from testifying at trial in his own defense. (7) He received ineffective assistance of counsel.

---

[20]Record Doc. No. 3.

[21]Record Doc. Nos. 1 and 2.

[22]Record Doc. No. 3. The claim numbering employed by Gross in his supporting briefs differs from the numbering of his grounds for relief contained in the form petition itself at ¶ 12 pp. 5-6. For purposes of this report, I employ and refer to the claims by the "Claim No. __" designation used by Gross in his supporting brief, not in his petition. Defense counsel followed the same approach in addressing plaintiff's arguments in defendants' opposition memorandum.

(8) His Sixth Amendment right to confront a witness was violated when he could not cross-examine Katina Rose, the author of a letter admitted into evidence against him at trial.

The State filed an answer and memorandum in opposition to the petition, conceding that Gross's federal petition was timely filed, but arguing that Gross was procedurally barred from asserting five (5) of his claims, while all others should be dismissed on their merits.[23]

III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[24] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  The AEDPA therefore applies to Gross's petition, which, for reasons discussed below, is deemed filed in this federal court on April 7, 2009.[25]

---

[23]Rec. Doc. Nos. 12 and 13.

[24]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[25]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). In this case, the State concedes that Gross's petition was timely filed in this federal court.

I agree that Gross's federal petition has been timely filed. The long delay in bringing it to this court is largely attributable to the almost five years of delay in ruling on his application for post-conviction relief in the state trial court. Except for the period of about eight (8) months between the denial of his direct appeal by the Louisiana Supreme Court and his filing of an application for post-conviction relief in 2003, Gross had a properly filed and pending state court proceeding pending at all times sufficient adequately to toll the one-year AEDPA statute of limitations before he filed his federal petition. However, his claims must be dismissed on other grounds.

---

acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Gross's petition was actually filed by the clerk of court on May 29, 2009, when the filing fee was paid. Gross's petition was initially received by the clerk of court on April 9, 2009, without an application to proceed in forma pauperis or the requisite filing fee. The signature on his petition and the attached memorandum in support were dated April 7, 2009. The fact that he subsequently paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing Spotville, 149 F.3d at 374).

The record establishes that only two (2) of his claims were procedurally barred from review by the Louisiana First Circuit Court of Appeal in its opinion on direct appeal dated December 28, 2001. The appellate court relied upon Louisiana's procedural rules requiring a timely contemporaneous objection or filing of a motion to quash to preserve the claims to deny relief on Claims Nos. 2 and 4, the issues concerning grand jury foreperson selection and the prosecutor's closing argument. As to three (3) other claims, Nos. 5, 6 and 8, the State erroneously seeks to assert procedural bars that were not relied upon by the state courts in denying relief on those issues. I find, however, that the remainder of his claims should be dismissed on their merits.

IV.   PROCEDURAL DEFAULT

In this federal petition, Gross asserts eight claims. In its response, the State argues that the following five (5) claims are procedurally barred from review in this court: (1) Claim No. 2, that the indictment was flawed because La. Code Crim. P. art. 413(B) unconstitutionally permitted racial discrimination in the selection of his grand jury foreperson; (2) Claim No. 4, that the prosecutor's improper closing argument violated his right to a fair trial; (3) Claim No. 5, that his due process rights were violated by failure to include a crucial element of the offense in his indictment; (4) Claim No. 6, that his right to testify in his own defense was denied; and (5) Claim No. 8, that his right to confront and cross-examine a witness, Katina Rose, was denied.

As noted above, the state courts did not rely on a procedural bar when denying relief on Claims Nos. 5, 6 and 8. The last reasoned decision on these claims was the state trial court decision on January 30, 2008, which clearly addressed these claims on the merits. Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991). I can find no state court decision imposing procedural bar to a review of these claims to which this court can give deference. Thus, the State's procedural bar defense as to these claims is rejected, and these claims will be addressed below on the merits.

As to Claims Nos. 2 and 4, on December 28, 2001, the Louisiana First Circuit determined that Gross's grand jury claim was procedurally barred from review for failure to file a motion to quash the indictment as required by La. Code Crim. P. art. 535(D) and related state case law, and his challenge to the prosecutor's closing argument was barred from review for lack of a contemporaneous objection at trial pursuant to La. Code Crim. P. art. 841 and related state case law. This was the final reasoned decision on these claims by the state courts. Ylst, 501 U.S. at 802.

For the following reasons, these two claims are procedurally barred, and may not be addressed by this court. The United States Fifth Circuit Court of Appeals has stressed that a federal habeas court must determine as a threshold matter whether procedural default has occurred on any asserted claim. Nobles, 127 F.3d at 420.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the federal claim and adequate to support that judgment. Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S. 255, 260, 262 (1989)). This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. Harris, 489 U.S. at 263; Glover, 128 F.3d at 902. In this case, the last reasoned decision of the Louisiana First Circuit on December 28, 2001, barred both claims based on state procedural rules.

A.     INDEPENDENT AND ADEQUATE

For the foregoing state law procedural bars to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. Amos, 61 F.3d at

338.  The United States Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999).  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  Glover, 128 F.3d at 902.

1.     CLAIM NO. 2 - GRAND JURY FOREPERSON SELECTION PROCESS

The Louisiana First Circuit held that Gross failed to preserve his claim challenging the indictment as a result of the grand jury selection process for appellate review because it was not raised in a motion to quash, citing La. Code Crim. P. art. 535(D) and related state case law.  La. Code Crim. P. art. 535(D) provides that ". . . [t]he grounds for a motion to quash under Paragraphs B and C are waived unless a motion to quash is filed in conformity with those provisions."  This was recognized and discussed by the Louisiana Supreme Court in Deloch v. Whitley, 684 So.2d 349 (La. 1996),[26] which was also cited by the state appellate court when barring Gross's claim.

This contemporaneous objection rule has been found to be an adequate and independent state ground on which both Louisiana and federal courts have declined to

---

[26]In Deloch, the Louisiana Supreme Court held that defense counsel's failure to file a pretrial motion to quash waived the equal protection claim arising out of allegedly discriminatory selection of grand jury forepersons.

consider claims of discrimination in the selection of the grand jury and its forepersons.

See Francis v. Henderson, 425 U.S. 536, 540-41 (1976) (failure to file a pretrial motion to quash as required by Louisiana law is a waiver of the right to challenge the grand jury composition which the federal courts must respect) (citing Michel v. Louisiana, 350 U.S. 91, 97-98 (1955) (same)); Glover, 128 F.3d at 902 (state procedural bar is independent and adequate when it is evenhandedly applied); Williams v. Cain, 125 F.3d 269, 276 (5th Cir. 1997) (petitioner who failed to file pretrial motion to quash regarding his claim of discrimination in the grand jury foreperson selection process was procedurally barred under Louisiana law, and federal review was also barred). The Louisiana First Circuit's ruling was expressly independent of federal law and rested on a state procedural bar. Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.

2.      CLAIM NO. 4 - PROSECUTOR'S CLOSING ARGUMENT

The Louisiana First Circuit also held that Gross failed to preserve his claim challenging certain comments in the prosecutor's closing argument because there was no objection made at trial, citing La. Code Crim. P. art. 841 and related state case law. The principal Louisiana statutory provision requiring this type of contemporaneous objection is La. Code Crim. P. art. 841(A), which provides that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." Tasco v. Butler, 835 F.2d 1120, 1124 (5th Cir. 1988). It is well-settled that Louisiana's

contemporaneous objection rule is an independent and adequate state procedural ground, regularly applied by the Louisiana courts.  <u>Duncan v. Cain</u>, 278 F.3d 537, 541 (5th Cir. 2002) (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87-88 (1977)); <u>Marshall v. Cain</u>, 2006 WL 2414073 (E.D. La. Aug. 18, 2006) (Zainey, J.).  When the state court relies on this procedural default in dismissing a claim, as it did here, the claim is barred from federal habeas review.  <u>Duncan</u>, 278 F.3d at 541; <u>Riles v. McCotter</u>, 799 F.2d 947, 953 (5th Cir. 1986) (challenge to state's expert was procedurally barred from federal habeas review where state applied procedural default for failure to object at trial).

Because the state courts' decisions on these two claims rested on independent and adequate state rules of procedural default, this court may not review Gross's second and fourth claims challenging the indictment because of the grand jury selection process and the prosecution's closing argument.

B.    <u>CAUSE AND PREJUDICE</u>

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  <u>Glover</u>, 128 F.3d at 902 (citing <u>Coleman</u>, 501 U.S. at 731-32); <u>Amos</u>, 61 F.3d at 338-39 (citing <u>Harris</u>, 489 U.S. at 262; <u>Engle v. Isaac</u>, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. Id. at 486.

With respect to Claim No. 2, Gross alleges in his petition that counsel was ineffective because he failed to file a motion to quash or object based on the grand jury selection process. Gross's ineffective assistance of counsel claim is fully addressed later in this opinion, and my conclusion is that he has failed to state constitutionally ineffective assistance on this ground.

Gross has not offered any other cause for his default on either claim which would excuse the procedural bar imposed by the state courts. My review of the record does not support a finding that any factor external to the defense prevented Gross from raising these claims in a procedurally proper manner. The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue v. Johnson, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43). Having failed to show an

objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Gross's claims challenging the indictment because of the grand jury foreperson selection process and the prosecution's closing argument are therefore procedurally barred from review by this federal habeas corpus court.  See Trest v. Whitley, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), vacated on other grounds, 522 U.S. 87 (1998).[27]

C.    FUNDAMENTAL MISCARRIAGE OF JUSTICE

Gross may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  Hogue, 131 F.3d at 497 (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the

_____

[27]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument sua sponte. Id.

evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); Nobles, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.") When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. Glover, 128 F.3d at 903.

Gross does not present any evidence and the record contains nothing that suggests his actual innocence on the underlying conviction. He fails to present any evidence or persuasive argument of innocence that was not already presented to and resolved by the jury at trial and the state courts on subsequent review. His claims of innocence appear based on the same testimony considered by the jury at trial and the state courts on subsequent review, neither of which is sufficient to overcome the procedural bar. On the contrary, as discussed below, the evidence was more than sufficient to support his second degree murder conviction.

For these reasons, Gross has failed to overcome the procedural bar to his second and fourth claims in this federal habeas petition. His claims challenging the indictment because of the grand jury foreperson selection process and the prosecution's closing

argument are procedurally barred and must be dismissed with prejudice for that reason. As discussed below, the remainder of his claims must be dismissed on their merits.

V.    STANDARDS OF A MERITS REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S.

849 (2000)), aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485. "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

(A)    CLAIM NO. 1:  SUFFICIENCY OF THE EVIDENCE

Gross argues that the evidence was insufficient to support the second degree murder verdict, particularly in light of the evidence supporting his self-defense.  He alternatively argues that the jury erred in failing to return a verdict of manslaughter.

These arguments were asserted on direct appeal in the Louisiana First Circuit and were denied as meritless.  Relying on the well-established standard of Jackson v. Virginia, 443 U.S. 307 (1979), and related state law, the court considered the evidence, in a light most favorable to the prosecution, and resolved that the evidence was sufficient to support the verdict.

Under Jackson, the court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt.  Jackson, 443 U.S. at 319; Gilley v. Collins, 968 F.2d 465, 467 (5th Cir. 1992); Guzman v. Lensing, 934 F.2d 80, 82 (5th Cir. 1991).  The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  Guzman, 934 F.2d at 82 (citing Tyler v. Phelps, 643 F.2d 1095, 1102 (5th Cir. 1981)).

Gross was found guilty of second degree murder.  Second degree murder is defined by Louisiana law as "the killing of a human being . . . when the offender has a specific intent to kill or to inflict great bodily harm."  La. Rev. Stat. Ann. §

14:30.1(A)(1).  The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act."  La. Rev. Stat. Ann. § 14:10(1).  Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions.  State v. Sharlhorne, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989).

The evidence at trial established that the victim suffered five gunshot wounds, including one fatal shot to the head.[28]  The assistant coroner testified that it was possible that the victim could have been sitting up or rising up when the fatal bullet was shot into his head.[29]  He also noted in his report that blood tests revealed the victim had a blood alcohol level of .22 to .26.[30]  He testified that the victim was more than twice the legal alcohol limit, and he was "very intoxicated."[31]

---

[28]St. Rec. Vol. 4 of 4, Trial Transcript (continued), p. 243, 1/4-5/00 (Testimony of Dr. James Trailor).

[29]Id., pp. 263-64.

[30]Id., p. 261.

[31]Id., p. 261-62.

During the investigation, sheriff's deputies interviewed both Mary Bennett and Gross, neither of whom had noticeable bruising, swelling or cuts or asked for medical attention.[32]

The jury also heard the taped statement Gross gave to deputies.[33]  In that statement, Gross indicated that he and the victim were arguing about how the victim treated Gross's mother, Mary Bennett, and how they would kill each other one day.[34] Gross indicated that he retrieved his .22 caliber rifle from beneath a mattress as he taunted the victim about killing each other.[35]  Gross approached the bedroom where the victim was on his side in the bed with his head on the pillow.[36]  Gross then stated that he again asked the victim if he was going to kill Gross, and as the victim began to rise, Gross shot him repeatedly while standing at the door.  Gross told deputies that he put the gun away and left the house.[37]  He stated that his mother never rose from the couch or said anything to him.

---

[32]Id., p. 272 ( Testimony of Detective Kelly Gideon).

[33]Id., p. 277.

[34]St. Rec. Vol. 3 of 4, Gross's Statement, pp. 4-5, 2/7/99.

[35]Id., p. 5; St. Rec. Vol. 4 of 4, Trial Transcript (continued), p. 207, 1/4-5/00 (Testimony of Pat Lane, Forensic Scientist).

[36]Id., pp. 5-6.

[37]Id., p. 7.

Warden Randy Pinion of the Tangipahoa Parish Prison testified that Katina[38] Rose presented him with a copy of a letter written to her by Gross.[39]  The State presented the testimony of James Dupuis, a document examiner, who compared handwriting samples given by Gross to the handwriting on the letter.[40]  He determined that the letter to Rose was written by Gross.  Dupuis also read the letter in which Gross asked Rose to help him blame the murder on his mother, so he could get out of jail and because he believed that since his mother had no criminal record, she could get off easy.[41]

The defense also presented the testimony of Gross's sister-in-law, Kenyatta Knox, who testified that she saw the victim physically and verbally abuse Mary Bennett, Gross's mother, throughout the seven years she was around the family.[42]  She recalled that Gross and the victim argued during the prior Thanksgiving after Gross told the victim to stop hitting his mother.[43]  Knox further testified that she had no personal knowledge of the events surrounding or leading up to the shooting.[44]

---

[38]Misspelled "Katrina" in the transcript.

[39]St. Rec. Vol. 4 of 4, Trial Transcript (continued), p. 285, 1/4-5/00 (Testimony of Warden Randy Pinion).

[40]Id., pp. 290-293.

[41]Id., pp. 293-97; St. Rec. Vol. 3 of 4, Gross's Letter to Rose, 4/7/99.

[42]Id., pp. 301-303, 307.

[43]Id., p. 304.

[44]Id., pp. 308-09.

Walter Gross, Knox's husband and Ereedius Gross's brother, also testified about his mother's relationship with the victim, his stepfather of 19 years.[45]  He recalled that the victim angered easily and cursed at Mary Bennett.[46]  He stated that his mother was often scared, humiliated, and would cry frequently.  He testified that he saw the victim hit his mother on occasion, and that she suffered broken bones and other injuries over the years.[47]  He stated that his mother would never report the abuse because she was afraid.[48]  Walter Gross also testified that he had no personal knowledge of the events surrounding or leading up to the shooting.[49]

From this evidence, a reasonable factfinder could certainly find that Gross retrieved his rifle from under a mattress and went to his parents' bedroom where he shot his drunk stepfather, who was laying on the bed.  Gross shot five times into the victim's upper torso and head.  Just prior to the shooting, Gross by his own admission repeated the statement that he and the victim would kill each other.  He also stated to detectives that he did not let the victim rise from the bed before shooting him repeatedly.  These

---

[45]Id., p. 313.

[46]Id., p. 314.

[47]Id., pp. 314, 318.

[48]Id., pp. 318-19.

[49]Id., pp. 322-23.

facts were sufficient for the factfinder to conclude that Gross had the specific intent to kill the victim.

Considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could easily find that the evidence was more than sufficient to establish that Gross acted with specific intent to kill in support of the verdict of second degree murder.  Gross has not shown that the state court's denial of relief was contrary to, or an unreasonable application of, federal law.  He is not entitled to relief on this claim.

(B)      CLAIM NO. 3:  PEREMPTORY JURY CHALLENGE

Gross alleges that he was denied an impartial jury and a fair trial because the state trial court erroneously allowed the State to exercise one of its peremptory challenges after the jury panel was sworn, in violation of Louisiana law.  Specifically, he alleges the state trial court allowed the prosecution to exercise its last peremptory exception to "back-strike" jury panelist Chad Lee.  Gross indicates that the court had previously rejected the State's challenge for cause, but allowed the prosecution to exercise its last peremptory challenge in an untimely manner.  He alleges that Lee had already been accepted by both parties and sworn as a juror.  He argues that this was a violation of La.

Code Crim. P. art. 795(B)(1), which provides that "[p]eremptory challenges shall be exercised prior to the swearing of the jury panel."[50]

Gross first raised this claim pro se on direct appeal to the Louisiana First Circuit. The court noted that after jury selection , the State was allowed to exercise its peremptory strike against Chad Lee. The trial court overruled defense counsel's objection on grounds that the back-strike was permissible through the time the jury panel was sworn. Relying on State v. Watts, 579 So.2d 931 (La. 1991), and Riddle v. Bickford, 767 So.2d 793, 796 (La. App. 1st Cir. 2000), the Louisiana First Circuit found that although Lee had been temporarily accepted and sworn, it was permissible for the court to allow a peremptory challenge prior to the swearing of the entire panel in accordance with La. Code Crim. P. 790.[51] The appellate court denied Gross's claim as meritless.

As an initial matter, Gross claims that the prosecutor and the state trial court violated Louisiana law when the prosecutor was allowed to back-strike Lee. A federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998) (quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) and Lewis v. Jeffers, 497 U.S. 764, 780

---

[50]See also, La. Code Crim. P. art. 783 which provides, in pertinent part, that "[t]he court may excuse a member of the petit jury venire at any time prior to the time he is sworn as a juror to try a particular case."

[51]La. Code Crim. P. art. 790 provides, in pertinent part, that "[w]hen selection of jurors and alternate jurors has been completed ... the jurors shall then be sworn in together. . ."

(1990), and citing <u>West v. Johnson</u>, 92 F.3d 1385, 1404 (5th Cir. 1996)); <u>accord</u> <u>Turner</u>

<u>v. Johnson</u> , 46 F. Supp.2d 655, 674 (S.D. Tex. 1999).  "[I]t is not the province of a

federal habeas court to reexamine state-court determinations on state-law questions."

<u>Estelle</u>, 502 U.S. at 67-68; <u>see also</u>, <u>Molo v. Johnson</u>, 207 F.3d 773, 776 n.9 (5th Cir.

2000) ("Federal habeas review does not extend to state court conclusions of state law.");

<u>Hogue</u>, 131 F.3d at 506 (a disagreement as to state law is not cognizable on federal

habeas review).  The state courts' application and interpretation of La. Code Crim. P. art.

795 is not a basis for federal habeas corpus relief.

Instead, federal habeas courts sit only to address violations of a constitutional

magnitude and where the proceedings violate due process such that the violation renders

the criminal proceeding fundamentally unfair.  <u>Lisenba v. People of the State of</u>

<u>California</u>, 314 U.S. 219, 236-37 (1941); <u>Peters v. Whitley</u>, 942 F.2d 937, 940 (5th Cir.

1991) (habeas review is proper only to determine whether a state trial judge's error is so

extreme as to render the trial fundamentally unfair or violate an explicit constitutional

right.)

The denial of due process presents a mixed question of law and fact.  <u>Dickson v.</u>

<u>Sullivan</u>, 849 F.2d 403, 405-06 (9th Cir. 1988).  Under the applicable standard of review,

this court therefore must determine if the state court's decision is contrary to or involved

an unreasonable application of Supreme Court precedent prohibiting an unfair trial.

In this case, Gross's petition may be broadly read to argue that he was denied an impartial jury and a fair trial because the juror had already been accepted as a fair and impartial juror and his subsequent dismissal on peremptory challenge was inappropriate. The Sixth Amendment right to a fair trial guarantees an impartial jury. Nebraska Press Assoc. v. Stuart, 427 U.S. 539, 551 (1976). The "right to an impartial adjudicator, be it judge or jury" is among the basic fair trial rights, violation of which "'can never be treated as harmless.'" Gray v. Mississippi, 481 U.S. 648, 668 (1987) (quoting Chapman v. California, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967)). However, the Supreme Court has "squarely held that an impartial jury consists of nothing more than 'jurors who will conscientiously apply the law and find the facts.'" Lockhart v. McCree, 476 U.S. 162, 178 (1986) (quoting Wainwright v. Witt, 469 U.S. 412, 423 (1985); see also, Smith v. Phillips, 455 U.S. 209, 217 (1982) ("Due process means a jury capable and willing to decide the case solely on the evidence before it"); Irvin v. Dowd, 366 U.S. 717, 722 (1961) ("In essence, the right to jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors").

Gross has not alleged that the jury which actually decided his case was anything other than impartial or that the release of juror Lee in any way affected the remaining jurors' fairness and impartiality. See Ross v. Oklahoma, 487 U.S. 81, 88 (1988) ("So

long as the jury that sits is impartial," the use of a peremptory challenge to achieve that goal does not violate the constitution).

Furthermore, the Supreme Court has made clear that ". . . [peremptory] challenges are auxiliary; unlike the right to an impartial jury guaranteed by the Sixth Amendment, peremptory challenges are not of federal constitutional dimension." United States v. Martinez-Salazar, 528 U.S. 304 (2000) (citing Ross, 487 U.S. at 88). As a result, "[b]ecause peremptory challenges are a creature of statute and are not required by the Constitution, it is for the State to determine the number of peremptory challenges allowed and to define their purpose and the manner of their exercise." (citations omitted) Ross, 487 U.S. at 88; Stilson v. United States, 250 U.S. 583, 586 (1919) ("There is nothing in the Constitution of the United States which requires the Congress to grant peremptory challenges.").

As resolved by the state courts, the timing of the peremptory challenge against Lee complied with Louisiana law under La. Code Crim. P. art. 795(B)(1). Gross has not presented any argument or fact to show that the State's use of the peremptory challenge was otherwise inappropriate under federal law, such as for the exclusion by race or gender, an issue he has never raised in this court or any state court.

For these reasons, Gross has failed to raise a constitutional error or violation of due process arising out of the State's exercise of the peremptory challenge against Lee. He is not entitled to relief on this claim.

(C)     CLAIM NO. 5:  DEFECTIVE INDICTMENT

Gross alleges that the grand jury indictment in his case was unconstitutionally defective because it failed to allege the essential elements of the charged offense of second degree murder.  He first raised this claim in his application for post-conviction relief, which was denied by the state trial court on January 30, 2008. This was the last reasoned decision on the issue.

To the extent Gross argues that the indictment failed to comply with the requirements of Louisiana law regarding presentation of the elements of the crime of second degree murder, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted).  As discussed previously, this court's analysis focuses on due process considerations, and due process requires that the court grant the writ only when the errors of the state court make the underlying proceeding fundamentally unfair.  Neyland v. Blackburn, 785 F.2d 1283, 1293 (5th Cir. 1986). Thus, the court may consider Gross's arguments only in the context of federal constitutional law.

The United States Court of Appeals for the Fifth Circuit, however, has declined to review claims of insufficient indictment forms because "[t]he sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction . . . [and] this can be determined only by looking to the law of the state where the indictment was issued." Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985) (citation and quotations omitted) (emphasis added); Murphy v. Beto, 416 F.2d 98, 100 (5th Cir. 1969). Resolution of such an issue on federal habeas review is precluded "[w]hen it appears ... that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case. ..." Alexander, at 598 (quotation and citation omitted); Murphy, 416 F.2d at 100 ("[J]urisdiction to try an offense includes jurisdiction to determine whether the offense is properly charged.")

Gross's claim challenging the sufficiency of the indictment was presented to the Louisiana Supreme Court in his post-conviction writ application. By denying the application, the Louisiana Supreme Court necessarily acquiesced in the state trial and appellate courts' dismissal of that claim on the basis that the indictment was sufficient under Louisiana state law. See Ylst, 501 U.S. at 802; Alexander, 775 F.2d at 599 ("By refusing to grant appellant relief ... the Texas Court of Criminal Appeals has necessarily,

though not expressly, held that the Texas courts have jurisdiction and that the indictment is sufficient for that purpose.") The Louisiana Supreme Court has therefore had the opportunity to address Gross's challenge to his indictment and has by inference determined that the indictment was proper. For this reason, federal review of this claim is prohibited.

Even if due process analysis is applied, the United States Supreme Court has held that an indictment is sufficient if it both informs the defendant of the accusation against him so as to enable him to prepare his defense, and affords him protection against double jeopardy. United States v. Debrow, 346 U.S. 374 (1953); see also, La. Code Crim. P. art. 464.[52] The sufficiency of a state court bill of information or indictment will not be reviewed under Section 2254, unless it can be shown that it so defective that it deprives the convicting court of jurisdiction. McKay v. Collins, 12 F.3d 66, 68 (5th Cir. 1994).

The grand jury indictment in Gross's case read, in pertinent part, as follows:[53]

THE GRAND JURY OF TANGIPAHOA PARISH, LOUISIANA
PRESENTS THAT
EREEDIUS L. GROSS AND MARY BENNETT

---

[52]La. Code Crim. P. art. 464 provides:
The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice (emphasis added).

[53]St. Rec. Vol. 1 of 4, Indictment, 4/28/99.

On the 7th day of February, 1999

within the jurisdiction of this Honorably Court did willfully and unlawfully violate Louisiana Revised Statute 14:30.1, in that they did acting together, aiding and assisting each other did commit second degree murder of Joseph Bennett.

Contrary to the law of the State of Louisiana against the peace and dignity of the same.

The indictment form used in Gross's case was authorized by La. Code Crim. P. art. 462[54] and 465(A)(32).[55] This same indictment form has been found to provide the necessary due process protections required by federal law. See Lindsey v. Cain, No. 05-1593, 2009 WL 1575466 at *12 (E.D. La. May 29, 2009) (attached Report and Recommendation adopted by District Court); Brown v. Cain, No. 99-2667, 2001 WL 96410 at *3 (E.D. La. Feb. 2, 2001) (Schwartz, J.) (addressing Louisiana short form

---

[54]The language of the short form indictment is provided for in La. Code Crim. P. art. 462:
The indictment by a grand jury may be in substantially the following form:
In the (Here state the name of the court.) on the _____ day of _____, 19___. State of Louisiana v. A.B. (Here state the name or description of the accused.)
The grand jury of the Parish of _____, charges that A.B. (Here state the name or description of the accused.) committed the offense of _____, in that (Here set forth the offense and transaction according to the rules stated in this Title. The particulars of the offense may be added with a view to avoiding the necessity for a bill of particulars.) contrary to the law of the State of Louisiana and against the peace and dignity of the same.

[55]La. Code Crim. P. art. 465(A)(32) provides the short form language for second degree murder:
A. The following forms of charging offenses may be used, but any other forms authorized by this title may also be used: . . .
32. Second Degree Murder--A.B. committed second degree murder of C.D.
B. The indictment, in addition to the necessary averments of the appropriate specific form hereinbefore set forth, may also include a statement of additional facts pertaining to the offense charged. If this is done it shall not affect the sufficiency of the specific indictment form authorized by this article.

indictment and second degree murder); <u>Liner v. Phelps</u>, 731 F.2d 1201 (5th Cir. 1984) (addressing Louisiana short form indictment and first degree murder).

Gross was on notice of the statutory provision of which he was accused, the date and venue of the murder, and the identity of the victim.  This was more than adequate information to apprise him of the crime with which he was charged, second degree murder in violation of La. Rev. Stat. Ann. §14:30.1, and to comply with Louisiana law on the form of indictment.  The fact that other information pertaining to the offense was included in the language "shall not affect the sufficiency of the specific indictment form . . ."  La. Code Crim. P. art. 465(B) (<u>supra</u>. at footnote 57).

The details provided in Gross's indictment comply with the test for constitutional sufficiency established by the Supreme Court.  Thus, the holding by the state trial and appellate court, upheld by the Louisiana Supreme Court, was not contrary to or an unreasonable application of Supreme Court precedent.  Gross is not entitled to relief on this claim.

(D)     <u>CLAIM NO. 6:  RIGHT TO TESTIFY</u>

Gross alleges that his trial counsel denied him the right to testify on his own behalf.  In support of this claim, he argues that his counsel prevented him from testifying, which was his only way to establish grounds for a manslaughter verdict.  He concedes that his counsel advised against it because Gross had a prior criminal record which would

be used against him.  He claims that he would have testified that he believed that the victim, though intoxicated, kept a gun in his bedroom and had threatened him and his mother.  He asserts that he would have testified that he thought the victim would come after him with the gun, so he feared for his life.  He also wanted to testify about the years of abuse his mother had suffered.

Gross initially raised this claim in his application for post-conviction relief, which was denied by the state trial court.  The court held that the post-conviction hearing testimony of counsel and Gross did not establish that counsel actually prevented Gross from testifying.  Instead, the court found that Gross did not make known his desire to testify to the trial court or reurge it to counsel after counsel advised against it.  This was the last reasoned decision on the issue.

It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth and Fourteenth Amendments.  Rock v. Arkansas, 483 U.S. 44 (1987); Jordan v. Hargett, 34 F.3d 310, 312 (5th Cir.1994).  When as here, the petitioner alleges that his counsel, not the court or the State, prevented him from testifying, the United States Fifth Circuit has held that the "appropriate vehicle for such claims is a claim of ineffective assistance of counsel." Sayre v. Anderson, 238 F.3d 631, 634 (5th Cir. 2001) (quoting United States v. Brown, 217 F.3d 247, 258-59 (5th Cir. 2000)).  Gross's claim was not presented to the state courts in that fashion, although he

adds argument to his federal petition tending toward such a claim.  To the extent the claim was not wholly presented to the state courts, I find that it is without merit and can be addressed without requiring further exhaustion.  28 U.S.C. § 2254(b)(2).

Insofar as the claim is urged as a direct violation of the right to testify, Gross has not shown that he is entitled to relief.  A defendant can only waive his right to testify if that waiver is knowing, intelligent and voluntary.  Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997).  A violation of this right occurs only if the "'final decision that [the defendant] would not testify was made against his will.'"  Id. (quoting United States v. Teague, 908 F.2d 752, 759 (11th Cir. 1990), reh'g granted, 953 F.2d 1525 (11th Cir.), cert. denied, 506 U.S. 842 (1992)).  A habeas petitioner has the burden of proving that he was denied this constitutional right.  "[A] petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand."  Turcios v. Dretke, No. H-97-0515, 2005 WL 3263918 at *6 (S.D. Tex. 2005) (citing Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir. 1991)).

The Underwood court specifically noted the potential problems that were bound to arise if habeas petitioners, making similar arguments, are not required to satisfy the required burden of proof.  Underwood, 939 F.2d at 475-76.  Adopting the reasoning in Siciliano v. Vose, 834 F.2d 29, 31 (1st Cir. 1987), the Underwood court recognized that

such an assertion, even if made under oath, "is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary - and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify - to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim." Id., 939 F.2d at 475-76. I find this analysis persuasive.

In the instant matter, there is no evidence to support Gross's claims that his lawyer prevented him from testifying. At the evidentiary hearing before the state trial court, Gross's trial counsel, Lance Engolia, testified that he was not lead counsel for the trial and he did not recall that Gross wanted to testify.[56] He indicated that it was Gross's decision not to testify.[57]

Gross testified at the same hearing that he made a request to his trial counsel that he testify on his own behalf.[58] When asked what he was told by counsel, he replied:[59]

---

[56]St. Rec. Vol. 2 of 4, Hearing Transcript, pp. 14-15, 19, 24, 1/30/08 (Testimony of Lance Engolia as "not lead counsel."); St. Rec. Vol. 3 of 4, Hearing Transcript (continued), p. 42, 1/30/08 (Testimony of Lance Engolia regarding Gross's decision not to testify).

[57]St. Rec. Vol. 3 of 4, Hearing Transcript (continued), p. 42, 1/30/08 (Testimony of Lance Engolia regarding Gross's decision not to testify).

[58]Id., p. 48.

[59]Id.

Mr. Engolia say, "You're already a convicted felon so ain't no use to put you on the stand because the jury is not going to believe you anyway."

As determined by the state trial court, Gross did not testify or present any evidence which would indicate that his trial counsel actually prevented him from testifying.[60] Instead, he simply acquiesced to the sound advice given.[61]  That is not alone sufficient to prove a violation of his right to testify.

I also note that, to the extent this claim is considered as one raising in part a claim of ineffective assistance, Gross has not demonstrated a deficiency or prejudice resulting from counsel's advice not to testify under the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984), which are more thoroughly discussed below.  There is no violation of the right to testify where the defendant merely acquiesced during trial to his attorney's recommendation that he not testify, even if the defendant decides later, in hindsight, that he should have testified.  Jordan, 34 F.3d at 312.

Gross does not dispute that he had a prior criminal record or that he had already confessed to killing his stepfather in both his statement to detectives and in the letter sent to his girlfriend.  Counsel's advice was based on legitimate grounds.  The jury also heard testimony from his brother and sister-in-law to confirm the defense's suggestion that

---

[60]Id., p. 62.

[61]There is a strong presumption that trial counsel's advice regarding the decision not to testify is sound trial strategy.  Bower v. Quarterman, 497 F.3d 459, 474 (5th Cir. 2007).

Gross's mother had endured years of physical abuse. The risk of placing Gross on the stand to repeat this information was outweighed by his damaged credibility, in light of the confession and letter. As discussed above, there was more than sufficient evidence to support the second degree murder verdict, including Gross's own statement to police that his stepfather was reclining in bed when he approached him and shot five times before he could move. Gross has not demonstrated that, but for counsel's advise not to testify, the outcome of the trial would have been different.

I find that the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court precedent. Gross is not entitled to habeas corpus relief on this claim.

(E)     CLAIM NO. 7:  INEFFECTIVE ASSISTANCE OF COUNSEL

Gross alleges that he received ineffective assistance because his counsel prejudiced the defense by asking for a manslaughter verdict when self-defense, or defense of another, was the correct theory of the case. He also alleges that counsel was ineffective for failing to hire experts in support of the self-defense theory, specifically experts on bullet trajectory.[62] He also complains that his counsel did not allow him to testify.[63] Gross further alleges that counsel was ineffective because he did not adequately

---

[62]Rec. Doc. No. 3-2, Memorandum in Support, p. 32.

[63]I have addressed the latter issue in the prior section of this report.

investigate the case, as demonstrated by the failure to object to the indictment form and to the grand jury selection process under La. Code Crim. P. art. 413(B).[64]

Gross raised ineffective assistance of counsel in his pro se appellate brief on direct appeal to the Louisiana First Circuit. He argued that counsel was ineffective, in part, for failure to object to or file a motion to quash the indictment based on the unconstitutionality of the grand jury foreperson selection process under La. Code Crim. P. art. 413(B).[65] The Louisiana First Circuit denied relief on this claim based on its separate finding that Gross had not established that the grand jury foreperson selection process at the time of his indictment fostered discrimination. This was the last reasoned decision on this issue.

Gross raised ineffective assistance of counsel again in his application for post-conviction relief. His claim was based on counsel's failure to file a motion to quash the indictment, which was insufficient in form. He also alleged that counsel failed properly to investigate the case, as evidenced by the failure to challenge the trial court's jurisdiction based on the insufficient indictment.

At the hearing on the post-conviction application, Gross's appointed counsel broadened the claim to include an argument that counsel erred in failing to retain experts

---

[64]Rec. Doc. No. 3-2, Memorandum in Support, pp. 32-33.

[65]The other grounds raised in the state court appeal, failure to object to Pat Lane's testimony regarding white fibers and to the State's closing argument, are not before this court.

to challenge the forensic experts presented by the State at trial, specifically with respect to the trajectory of the bullet to determine whether the victim was standing or lying down and the handwriting on the letter to Katina Rose. Gross's counsel also argued that trial counsel erred in preventing Gross from testifying at trial.

The trial court resolved that the indictment was not deficient and no objection to it was necessary. The court also resolved that, based on the self-defense theory of the case and Gross's confessions, counsel exercised sound trial strategy in not pursuing experts to challenge the forensic evidence. As discussed above, the court also determined that counsel did not prevent Gross from testifying.

My review of the record also reveals that Gross did not present argument to the state courts regarding counsel's alleged prejudice to the defense by asking for a manslaughter verdict when self-defense was the correct theory of the case. Nevertheless, I find that this ground for relief is without merit and can be addressed without requiring further exhaustion. 28 U.S.C. § 2254(b)(2).

The issue of ineffective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994). Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The standard for judging the performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough, however, under Strickland 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical

decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

A.     FAILURE TO HIRE EXPERTS IN SUPPORT OF SELF-DEFENSE

Gross contends that his counsel was ineffective and prejudiced the case when counsel sought a manslaughter verdict instead of a not guilty verdict based on self-defense. Gross also argues that counsel further prejudiced the self-defense theory in failing to hire defense experts who could have supported the self-defense theory by addressing bullet trajectory and/or position of the victim at the time of the shooting.

At the evidentiary hearing on Gross' post-conviction application, defense counsel Engolia testified that, although he was not the lead trial counsel, he recalled that lead counsel pursued a self-defense, or defense of his mother, theory at trial.[66] He clarified later that the theory was actually more along the lines of manslaughter, where there was heat of passion in protecting someone.[67] With respect to the defense trial strategy, Engolia said:[68]

> Again, you're asking me something Ms. Henkels was the lead attorney on that case. She made the arguments, she made the - she

---

[66]St. Rec. Vol. 2 of 4, Hearing Transcript, pp. 23-24, 1/30/08; St. Rec. Vol. 3 of 4, Hearing Transcript (continued), pp. 35-36, 1/30/08.

[67]St. Rec. Vol. 3 of 4, Hearing Transcript (continued), p. 45, 1/30/08.

[68]Id., p. 24; St. Rec. Vol. 3 of 4, Hearing Transcript (continued), pp. 35-36, 1/30/08.

defended him. I was the co-counsel. I was second chair in this case. I would have to defer, but I would say yes, that was part of the strategy that we used and we consulted with Mr. Gross prior to and during the trial throughout the trial. We kept them apprised of what we were doing and why we were doing, and at no time did he disagree whatsoever to the strategy and the procedures that we did. At no time did he object or disagree to the way we were handling things.

Engolia acknowledged that the defense did not call any experts in response to the State's experts.[69] He later testified that, in his 17 years of experience, he had never known anyone to call a defense expert to contradict the State's ballistics expert or the coroner.[70] He and lead counsel also had other concerns in preparing for trial because Gross had already confessed at least twice to having shot his stepfather.[71] This weighed heavier on the preparations for trial than challenging the expert regarding the third confession, in the form of the letter to Katina Rose.[72] Engolia also testified that defense counsel "talked to Mr. Gross about our line of defense and it wasn't to refute any of the information from the experts, it was more of the lines of defense that he was defending his mother because the father had abused her and beaten her over a period of years and he had enough of it."[73]

---

[69]St. Rec. Vol. 2 of 4, Hearing Transcript, pp. 25-26, 1/30/08.

[70]St. Rec. Vol. 3 of 4, Hearing Transcript (continued), pp. 45-46, 1/30/08.

[71]St. Rec. Vol. 2 of 4, Hearing Transcript, pp. 23-24, 1/30/08.

[72]Id.

[73]St. Rec. Vol. 3 of 4, Hearing Transcript (continued), p. 37, 1/30/08.

Gross's post-conviction counsel attempted to show that trial counsel should have hired an expert to establish whether the victim was standing or lying down as an important part of proving a threat for the self-defense theory. He asked Engolia if it was true that "there was a question of fact about whether the victim was standing or lying."[74] Engolia responded that the victim was actually lying down at the time of the shooting.[75]

Gross's own recorded statement played for the jury established that, after Gross and the victim argued, the victim went to his room and was in his bed on his side with his head on the pillow when Gross approached the bedroom with his rifle.[76] Gross also indicated that as the victim tried to rise, he shot him five times.[77] Gross did not let him get up before he fired.

Gross's counsel also cross-examined the assistant coroner about the position of the victim at the time of the shooting. The assistant coroner conceded that it was possible that the victim could have been sitting up or rising up when the fatal bullet was shot into his head.[78] Thus, the jury had sufficient facts to question whether the victim was rising from the bed.

_____

[74]Id., p. 40.

[75]Id.

[76]St. Rec. Vol. 3 of 4, Gross's Statement, pp. 5-6, 2/7/99.

[77]Id.

[78]St. Rec. Vol. 4 of 4, Trial Transcript (continued), pp. 263-64, 1/4-5/00.

As indicated by counsel at the post-conviction hearing and in opening argument at trial, self-defense or defense of another was presented to the jury as a basis for the heat of passion element of a manslaughter verdict.[79]  Although Gross and his post-conviction counsel referred to the defense theory solely as one of self-defense, that was not the entire strategy used at trial.  Furthermore, the fact that a defense was not successful does not stand alone to establish deficient performance.  <u>Martinez v. Dretke</u>, 99 Fed. Appx. 538, 543 (5th Cir. 2004).  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." <u>Strickland</u>, 466 U.S. at 689 (citations omitted).

Considering the foregoing, Gross has not established that his counsel was deficient in presenting evidence in support of the defense theory or in failing to hire defense experts.  The record shows that counsel consulted him about the defense strategy and pursued that strategy as efficiently as possible in light of the circumstances of the case.  Trial counsel in fact used the State's medical expert to present to the jury the possibility that the victim was not reclining in bed when he was shot.  Trial counsel, at the post-conviction hearing, testified that the handwriting evaluation and the letter to Katina Rose were not the focus of the defense, since it was no more than a third confession.  The fact

---

[79]<u>Id</u>., pp. 186, 188; St. Rec. Vol. 3 of 4, Hearing Transcript (continued), p. 45, 1/30/08.

that Gross in fact shot the victim was not at issue. Rather than focus on the letter, counsel pursued the theory of defense of another as a basis for a manslaughter verdict.

The state trial court resolved that counsel's actions fell within the ambit of sound trial strategy. The record supports this conclusion. Counsel's actions can not now be judged in hindsight or based upon their lack of ultimate success. The state court's denial of relief on this issue was not contrary to, or an unreasonable application of, <u>Strickland</u>.

B.      <u>RIGHT TO TESTIFY AT TRIAL</u>

This issue has already been addressed in the prior section of this report in connection with Gross's claim that he was denied the right to testify at trial. It does not require repeating or further discussion here. Gross is not entitled to relief on this claim.

C.      <u>FAILURE TO OBJECT TO THE DEFICIENT INDICTMENT FORM</u>

Gross argues that his counsel should have objected to the deficient form of the indictment. I have rejected Gross's claim that the form of the indictment was deficient in a prior section of this report. Gross raised this claim on post-conviction and it was found to be meritless by the state trial court. I have concluded in this report that the indictment was not deficient in form under either state or federal law, and Gross is not entitled to habeas relief on that claim.

Because the indictment was not deficient in form, there was no basis for counsel to have objected or to have filed a motion to quash. Counsel's failure to make a frivolous

or baseless objection is not deficient performance falling below an objective level of reasonableness. <u>Green v. Johnson</u>, 160 F.3d 1029, 1037 (5th Cir.1998). The state courts' denial of relief was not contrary to, or an unreasonable application of, <u>Strickland</u>. Gross is not entitled to relief on this claim.

D.  <u>FAILURE TO OBJECT TO INDICTMENT AND JURISDICTION BASED ON GRAND JURY FOREPERSON SELECTION PROCESS</u>

Gross alleges that his counsel was ineffective for failing to object to (or file a motion to quash) the indictment and the trial court's jurisdiction because the grand jury foreperson selection process under La. Code Crim. P. art. 413(B) was unconstitutional. Gross initially raised this claim pro se on direct appeal. The Louisiana First Circuit denied relief on this claim based on the fact that his underlying challenge to the indictment based on La. Code Crim. P. art. 413(B) was meritless. As outlined previously, the court initially rejected Gross's challenge to the indictment as procedurally defaulted. In its alternative comments on the merits, the court held that <u>Campbell v. Louisiana</u>, 532 U.S. 392 (1998)[80] did not deem La. Code Crim. P. art. 413(B) to be

_____

[80]In <u>Campbell</u>, the Supreme Court held that a white criminal defendant has standing to object to discrimination against black persons in the selection of grand jurors and found the selection process in La. Code Crim. P. art. 413(B) to be constitutionally suspect. At the time, Article 413(B) provided:

> In parishes other than Orleans, <u>the court shall select one person from the grand jury venire to serve as foreman of the grand jury</u>. The sheriff shall draw indiscriminately and by lot from the envelope containing the remaining names on the grand jury venire a sufficient number of names to complete the grand jury.

La. Code Crim. Proc. art. 413(B) (emphasis added) (prior to amendment by Acts 1999, No. 984, § 1, approved July 9, 1999).

unconstitutional. In addition, the court noted that Gross had not established that the grand jury foreperson selection process at the time of his indictment fostered discrimination.

Under Louisiana law, a motion to quash a grand jury indictment may be filed if, among other things, "the manner of selection of . . . the grand jury venire, or the grand jury was illegal." La. Code Crim. P. art. 533.[81] However, federal courts have long recognized that the filing of a motion to quash of this type is generally a matter of professional judgment left to the discretion of counsel. Williams v. Beto, 354 F.2d 698, 703 (5th Cir. 1965) (citing Michel, 350 U.S. at 91); United States v. Lewis, 786 F.2d 1278, 1283 n.4 (5th Cir. 1986).

In Michel, the Supreme Court held that the failure of counsel to move to quash the indictment on grounds that the grand jury was unconstitutionally impaneled because of the historical exclusion of African-Americans from the grand jury, including such

---

[81]La. Code Crim. P. art. 533 provides:
A motion to quash an indictment by a grand jury may also be based on one or more of the following grounds:
(1)     The manner of selection of the general venire, the grand jury venire, or the grand jury was illegal.
(2)     An individual grand juror was not qualified under Article 401.
(3)     A person, other than a grand juror, was present while the grand jurors were deliberating or voting, or an unauthorized person was present when the grand jury was examining a witness.
(4)     Less than nine grand jurors were present when the indictment was found.
(5)     The indictment was not indorsed "a true bill," or the endorsement was not signed by the foreman of the grand jury.

exclusions in the consolidated cases then before the Court, was not deficient performance per se and was within the range of sound trial strategy, given the facts of the case. Michel, 350 U.S. at 100. In this case, Gross has not demonstrated that his counsel was outside of this standard in failing to object to the indictment or the court's jurisdiction based on the grand jury selection process.

Even if deficient performance could somehow be found, Gross cannot demonstrate prejudice arising from counsel's actions. See Pickney v. Cain, 337 F.3d 542, 545 (5th Cir. 2003) (addressing prejudice in terms of ineffective assistance of counsel to avoid a procedural default). In light of the strong evidence against Gross, even if counsel had filed a successful motion to quash the indictment, the State would have undoubtedly sought and obtained a second indictment, and there is no showing that the result would have been any different. Brown v. Cain, 337 F.3d 546, 550 n. 5 (5th Cir. 2003), cert. denied, 540 U.S. 117 (2004); Pickney, 337 F.3d at 545 ("[W]e have no doubt that, if [petitioner] had been successful in having his indictment quashed, the State of Louisiana would have sought and obtained a second indictment"); Merridith v. Cain, No. 04-1227, 2006 WL 2054446 at *8 (W.D. La. June 29, 2006) (report and recommendation adopted by district judge).

Gross has not shown defective performance by counsel or any prejudice resulting from a failure to file a motion to quash or object to the state trial court's jurisdiction. For

these reasons, the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, <u>Strickland</u>.  He is not entitled to relief on this claim.

(F)     CLAIM NO. 8:  RIGHT TO CONFRONTATION

Gross alleges that he was denied his right under the Confrontation Clause to cross-examine Katina Rose as to whether she gave Warden Randy Pinion the inculpatory letter. Gross claims that he was denied the ability to question Rose as to whether she gave the letter to Warden Pinion, who presented the letter at trial.

Gross first raised this claim in his application for post-conviction relief before the state trial court.  In its ruling denying relief, however, the state trial court simply found that Gross was not entitled to his own handwriting expert to refute the admission of the letter.  Neither the trial court nor the state appellate courts expressly addressed the issue with respect to his ability to confront Rose.

The Confrontation Clause of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted by the witnesses against him."  U.S. Const. amend. VI.  In <u>Ohio v. Roberts</u>, 448 U.S. 56 (1980), the Supreme Court recognized that the Confrontation Clause, read literally, would require the exclusion of any statement made by a declarant not present at trial, subject to some exceptions.  "In short, the Clause envisions a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of

testing the recollection and sifting of the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand the manner in which he gives his testimony whether he is worthy of belief." Roberts, at 63-64.

Later, the Supreme Court made clear that the Confrontation Clause is violated by the admission of out-of-court "testimonial statements" unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant regarding the statements. Crawford v. Washington, 541 U.S. 36, 68 (2004). The fact that the statements would be otherwise admissible as an exception to the hearsay rule or under other applicable laws of evidence is not controlling. "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." Crawford, at 68-69. Only testimonial statements cause the declarant to be a "witness" within the meaning of the Confrontation Clause. Id., at 51. The testimonial character of the statement is what separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause. Davis v. Washington, 547 U.S. 813, 821 (2006).[82]

_____

[82]In Davis, 547 U.S. at 822, the United States Supreme Court explained, at least in part, the difference between "nontestimonial" and "testimonial" statements:

> Without attempting to produce an exhaustive classification of all conceivable statements-or even all conceivable statements in response to police interrogation-as

In this case, Rose did not make a testimonial statement as defined by the Supreme Court, and the Confrontation Clause does not apply. Neither the letter itself nor its contents were obtained by police interrogation or presented in testimonial form. Instead, as Gross argues, Rose was the person who presented his letter to Warden Pinion. This does not fit the definition of testimony adopted by the Supreme Court.

The answer to the first question was suggested in <u>Crawford</u>, even if not explicitly held:

> "The text of the Confrontation Clause reflects this focus [on testimonial hearsay]. It applies to 'witnesses' against the accused-in other words, those who 'bear testimony.' 1 N. Webster, An American Dictionary of the English Language (1828). 'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.' Ibid. An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." 541 U.S., at 51, 124 S.Ct. 1354.

A limitation so clearly reflected in the text of the constitutional provision must fairly be said to mark out not merely its "core," but its perimeter.

We are not aware of any early American case invoking the Confrontation Clause or the common-law right to confrontation that did not clearly involve testimony as thus defined. Well into the 20th century, our own Confrontation Clause jurisprudence was carefully applied only in the

---

either testimonial or nontestimonial, it suffices to decide the present cases to hold as follows: Statements are nontestimonial when made <u>in the course of police interrogation</u> under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the <u>primary purpose of the interrogation</u> is to establish or prove past events potentially relevant to later criminal prosecution (emphasis added).

testimonial context. See, e.g., <u>Reynolds v. United States</u>, 98 U.S. 145, 158, 25 L.Ed. 244 (1879) (testimony at prior trial was subject to the Confrontation Clause, but petitioner had forfeited that right by procuring witness's absence); <u>Mattox v. United States</u>, 156 U.S. 237, 240-244, 15 S.Ct. 337, 39 L.Ed. 409 (1895) (prior trial testimony of deceased witnesses admitted because subject to cross-examination); <u>Kirby v. United States</u>, 174 U.S. 47, 55-56, 19 S.Ct. 574, 43 L.Ed. 890 (1899) (guilty pleas and jury conviction of others could not be admitted to show that property defendant received from them was stolen); <u>Motes v. United States</u>, 178 U.S. 458, 467, 470-471, 20 S.Ct. 993, 44 L.Ed. 1150 (1900) (written deposition subject to cross-examination was not admissible because witness was available); <u>Dowdell v. United States</u>, 221 U.S. 325, 330-331, 31 S.Ct. 590, 55 L.Ed. 753 (1911) (facts regarding conduct of prior trial certified to by the judge, the clerk of court, and the official reporter did not relate to defendants' guilt or innocence and hence were not statements of "witnesses" under the Confrontation Clause).

(footnote omitted) <u>Davis</u>, 547 U.S. at 823-825.

Gross has failed to establish that the Confrontation Clause was invoked by Rose's presentation of his letter to Warden Pinion. This act does not fit the definition of testimony subject to the Confrontation Clause.

Furthermore, Gross argues that Rose was incarcerated and implicated as an accessory after the fact in the murder. The Fifth Circuit has held that "[s]tatements made between co-conspirators in furtherance of a conspiracy are not testimonial." <u>United States v. King</u>, 541 F.3d 1143, 1145-46 (5th Cir. 2008). Such statements "are by their nature generally nontestimonial and thus are routinely admitted against an accused despite the absence of an opportunity for cross-examination." <u>United States v. Holmes</u>, 406 F.3d 337, 348 (5th Cir. 2005).

To the extent Gross sought Rose's cross-examination testimony as part of an evidentiary chain of custody for the letter or necessary for the authenticity of the letter, his claim would not invoke federal habeas scrutiny. Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992). The states are free to implement procedures regarding the admission of evidence, provided those procedures do not infringe on a constitutional guarantee. Burgett v. Texas, 389 U.S. 109 (1967).

The letter itself also falls outside of the Confrontation Clause protections. Since the out-of-court statements in the letter were made by Gross himself, he can claim no Confrontation Clause violation. See United States v. Matlock, 415 U.S. 164, 172 (1974) ("... the respondent's own out-of-court admissions would surmount all objections based on the hearsay rule both at the suppression hearings and at the trial itself ..."); United States v. Moran, 759 F.2d 777, 786 (9th Cir. 1985); United States v. Rios-Ruiz, 579 F.2d 670, 676-77 (1st Cir. 1978); United States v. Manfre, 368 F.3d 832, 838 n.1 (8th Cir. 2004) (Crawford inapplicable to out-of-court statements made by defendant to his brother because they were "made to loved ones or acquaintances and are not the kind of memorialized, judicial-process-created evidence of which Crawford speaks."); United

States v. Morgan, 385 F.3d 196, 209 (2nd Cir. 2004) (letter written by co-defendant to her boyfriend "in the privacy of her hotel room" not testimonial).

Gross has failed to establish a violation of the Confrontation Clause through his inability to cross-examine Rose at trial. The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court law. Gross is not entitled to relief on this claim.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that the petition of Ereedius Gross for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v.

United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28

U.S.C. § 636(b)(1)).[83]

New Orleans, Louisiana, this ___11th___ day of March, 2010.


_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[83]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.